

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )   Case No.   **21-MJ-0973**
*or identify the person by name and address)* )
)
Gray SKY Devices )
Model: Elite C5 )
SSEE ES000066835 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 (a)(1) | Possession of a Controlled Substance with Intent to Distribute |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kyle Holley, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means)*.

Date:    March 15, 2021
_____
*Judge's signature*

City and state: San Diego, California        Hon. Linda G. Lopez, United States Magistrate Judge
*Printed name and title*

# **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Gray SKY Devices
> Model: Elite C5
> SSEE ES000066835
> (Target Device)

The Target Device is currently in the possession of the Drug Enforcement Administration (DEA) located at 4560 Viewridge Ave, San Diego, CA 92123.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of February 14, 2021 up to and including March 14, 2021

      a.    tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

      c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of methamphetamine, or other controlled substances within the United States;

      d.    tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;

      e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

      f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21, U.S.C., §§ 841.

1

2

**AFFIDAVIT**

3

I, Special Agent Kyle Holley, having been duly sworn, declare and state as

4

follows:

5

**INTRODUCTION**

6

1.      I make this affidavit in support of an application for a warrant to search

7

the following electronic device:

8

      Gray SKY Devices
      Model: Elite C5
      SSEE ES000066835

9

as further described in Attachment A, and to seize evidence of crimes, specifically

10

violations of Title 21, United States Code, Sections 841, Distribution and Possession

11

with Intent to Distribute Controlled Substances, as further described in Attachment

12

B. The requested warrant relates to the investigation and prosecution of Dustin

13

EVANS and Elena FERNANDEZ for possession, with intent to distribute,

14

approximately 3.614 kilograms (7.96 pounds) of methamphetamine. The Target

15

Device is currently stored as evidence at the Drug Enforcement Administration

16

(DEA) located at 4560 Viewridge Ave, San Diego, CA 92123.

17

2.      The information contained in this affidavit is based upon my training,

18

experience, investigation, and consultation with other members of law enforcement.

19

Because this affidavit is made for the limited purpose of obtaining a search warrant

20

for the Target Device, it does not contain all the information known by me or other

21

agents regarding this investigation.  All dates and times described are approximate.

22

**BACKGROUND**

23

3.      I have been employed as a Special Agent with the Drug Enforcement

24

Administration (DEA) since March 2003. I am currently assigned to the San Diego

25

Field Division (SDFD), Tactical Diversion Squad (TDS). I am a graduate of the

26

DEA Academy in Quantico, Virginia.

27

28

4.     During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and those who possesses and distribute narcotics within and throughout the United States.

5.     I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.). A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing and/or transporting the concealed narcotics in the United States. These communications can occur before, during and after the narcotics are imported into the United States and transported therein. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with co-conspirators immediately prior to and following their illicit transactions to negotiate prices and

1   quantities, coordinate meeting times and locations, discuss the transportation
2   through checkpoints, and then to discuss future transactions or future payments if
3   the narcotics were "fronted" (delivered without being paid for in advance).

4         6.    Based upon my training, experience, and consultations with law
5   enforcement officers experienced in narcotics trafficking investigations, and all the
6   facts and opinions set forth in this affidavit, I am aware that cellular telephones
7   (including their SIM card(s)) and other portable electronic devices (such as Laptops,
8   iPads, Tablets, etc.) can and often do contain electronic evidence, including, for
9   example, phone logs and contacts, voice and text communications, and data, such as
10   emails, text messages, chats and chat logs from various third-party applications,
11   photographs, audio files, videos, and location data. This information can be stored
12   within disks, memory cards, deleted data, remnant data, slack space, and temporary
13   or permanent files contained on or in the cellular telephone. Specifically, searches
14   of cellular telephones and other portable electronic devices (such as Laptops, iPads,
15   Tablets, etc.) of individuals involved in the importation of narcotics may yield
16   evidence:

17         a.    tending to indicate efforts to possess with the intent to distribute
18   controlled substances within the United States;

19         b.    tending to identify accounts, facilities, storage devices, and/or
20   services—such as email addresses, IP addresses, and phone numbers—used to
21   facilitate the distribution of and/or the possession with the intent to distribute
22   controlled substances within the United States;

23         c.    tending to identify co-conspirators, criminal associates, or others
24   involved in the distribution of and/or the possession with intent to distribute of
25   controlled substances within the United States;

26         d.    tending to identify travel to or presence at locations involved in
27   the distribution of or possession with intent to distribute controlled substances within
28

1  the United States, such as stash houses, residences used to prepare or process
2  controlled substances, load houses, or delivery points;

3      e.    tending to identify the user of, or persons with control over or
4  access to, the Target Device; and/or

5      f.    tending to place in context, identify the creator or recipient of, or
6  establish the time of creation or receipt of communications, records, or data involved
7  in the activities described above.

8      **FACTS SUPPORTING PROBABLE CAUSE**

9      7.    On March 13, 2021, at approximately 11:30 p.m., Dustin EVANS
10  (driver) and Elena FERNANDEZ (passenger), both U.S. Citizens, entered the
11  Highway 86 Westmoreland, CA, U.S. Border Patrol Check Point within the
12  Southern District of California, attempting to proceed northbound on Highway 86
13  while driving in a tan Honda Accord. At this time the checkpoint was fully
14  operational. While the Accord was in the primary line at the checkpoint, Border
15  Patrol Agents (BPAs) observed nervous behavior from EVANS during routine
16  questioning. FERNANDEZ, sitting in the front passenger seat of the vehicle, also
17  appeared to be fumbling with a bag and clothing by her feet.  EVANS and
18  FERNANDEZ were escorted to the secondary inspection area.

19      8.    At secondary inspection, a BPA canine conducted a sniff of the
20  Accord and the canine alerted. At that time, BPAs conducted a physical inspection
21  of the vehicle and discovered a white plastic bag located in the front passenger
22  area on the floor where FERNANDEZ was previously sitting.  BPAs located 28
23  egg shaped packages that contained crystal like substance wrapped in tape within
24  the white bag.  Agents conducted a field test of a randomly selected package and it
25  tested positive for the presence of methamphetamine with a seized weight of
26  approximately 3.506 Kilograms (7.730 pounds).

27

28

9.      EVANS and FERNANDEZ were placed under arrest at approximately 11:45 p.m. and charged for violation of Title 21, USC, 841(a)(1).

10.     The Target Device was found in the Accord at the time of arrest. EVANS made a statement regarding ownership of the Target Device, stating a friend gave it to him.

11.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the distribution of illicit narcotics within the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their trafficking activities, and for the individuals to be involved for weeks and months longer than they claim.  Accordingly, I request permission to search the Target Device for data beginning on February 14, 2021 and up to and including March 14, 2021.

## METHODOLOGY

12.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which

the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

13.    Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the Target Device and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

14.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the

analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

15.    Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

16.    Based on all of the facts and information described above, my training and experience, and consultations with other law enforcement officers, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841 and 846.    Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.


I swear the foregoing is true and correct to the best of my knowledge and belief.


_____
Special Agent Kyle Holley
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 15th day of March, 2021.


_____
HON. LINDA G. LOPEZ
UNITED STATES MAGISTRATE JUDGE

7